UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| LEON WILLIAMS, JR. | CIVIL ACTION |
| VERSUS | NO. 07-0500 |
| N. BURL CAIN, WARDEN<br>LOUISIANA STATE PENITENTIARY | SECTION "S"(4) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I. Factual Background

The petitioner, Leon Williams, Jr. ("Williams"), is an inmate currently incarcerated in the Louisiana State Penitentiary, Louisiana.[2] On April 27, 2000, Williams and a co-defendant, Larry

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

Harris ("Harris"), were indicted by a Grand Jury in Jefferson Parish for the first degree murder of Malinda James.[3]

The record reflects that, at approximately 9:00 p.m. on February 21, 2000, Vanessa Mack ("Mack") and her cousin, Malinda James ("James"), arrived at the Sports Palace located on Jefferson Highway to shoot pool.[4] Around 10:00 p.m., Ronald Lewis ("Lewis"), Mack's long-time neighbor, who happened to come into the bar and joined the two women to play pool. Around midnight, Mack and James decided to leave and asked Lewis if he would walk them to their car. The group exited the bar and, as they neared Mack's car, Mack saw two men run out from behind a dumpster located next to the Sports Palace. As the men approached, Mack recognized them as the Defendants, Harris and Williams. She had previously dated Harris for a couple of years.

Harris approached and asked Mack, "What's happening?" After a short conversation, Harris pulled a gun out of his pocket and shot Lewis in the head and he fell to the ground. Mack then saw Williams shoot James, who also fell to the ground. James suffered fatal gunshot wounds to her head, chest, and mid and lower back from both a .38 caliber pistol or a .357 revolver and a 9mm semi-automatic pistol.

Afterwards, Harris then shot Mack twice in the arm. Mack tried to walk to her car and, while attempting to get inside, she was shot in the back near her shoulder blade. Mack managed to get inside of her car but suffered additional gunshot wounds while seated inside of the car. Mack

---

[3]St. Rec. Vol. 1 of 27, Indictment, 4/27/00; Grand Jury Minutes, 4/27/00. The indictment spells the victim's name "Melinda" while the appellate court's opinion spells it "Malinda."

[4]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Harris*, 871 So.2d 599, 603-05 (La. App. 5th Cir. 2004); St. Rec. Vol. 8 of 27, 5th Cir. Opinion, 03-KA-1297, 3/30/04 (incomplete copy).

ultimately sustained five gunshot wounds to her arm, back, and both breasts. Mack heard many shots after she headed to the car and she was unsure of who fired them after she turned away.

Donald Davidson, who was at Pickle's Sports Bar located near the Sports Palace, heard the shooting and called 911. Mack eventually was able to give Jefferson Parish deputies Harris's name and address and identified Williams as his associate. She eventually informed deputies that Williams was using the revolver. Lewis later picked Harris's picture out of a photographic lineup, but he was unable to identify Williams's picture.

On February 22, 2000, after being informed by his daughter that he was a suspect in the shootings, Harris purchased a Greyhound Bus ticket to Houma. After arriving in Houma, Harris contacted his cousin, Charles Robinson ("Robinson"), and, with the assistance of Robinson's attorney, turned himself into the Terrebonne Parish authorities on February 23, 2000. The Jefferson Parish Sheriff's Office was contacted and Harris was released into their custody.

On February 28, 2000, after having been released from the hospital, Mack was riding around New Orleans with her sister when she observed Williams sitting inside of a truck parked at an Auto Zone. Mack and her sister followed the truck and wrote down the license plate number and the type of clothing Williams was wearing. Eventually, Mack and her sister informed a New Orleans Police Officer that she had seen the person who tried to kill her. The officer eventually observed a yellow truck with Mississippi plates that matched the description given to him by Mack, and he also observed a gentleman in the back of the truck meeting Williams's description.

After being taken to the location where Williams was seen, Mack positively identified him. Williams was then taken to the Sixth District police station where the Jefferson Parish officials were contacted. After reading Williams his rights, a Jefferson Parish deputy took a statement from him

that he was friends with Harris, that he had heard about the shooting, and that he had heard that the police were looking for Harris. However, Williams denied any involvement, stating that he was with a girlfriend at another address.

The matter was first brought to trial before a jury on March 26 through March 31, 2001, and Williams and Harris were found guilty as charged.[5] The jury recommended life imprisonment for both Defendants after the penalty phase.[6] The Trial Court thereafter sentenced Williams and Harris to life imprisonment without benefit of parole, probation, or suspension of sentence.[7]

Williams and Harris filed separate appeals with the Louisiana Fifth Circuit Court of Appeal raising similar issues:[8] (1) insufficient evidence to convict; (2) the Trial Court erred in failing to suppress the identification testimony by Lewis; and (3) numerous errors in the jury selection process rendered the trial unfair. On October 29, 2002, in separate opinions, the Louisiana Fifth Circuit found no merit to the first two claims as to each defendant.[9] The court, however, determined that the trial was tainted by the prejudicial effect of the selection of Merry Miller as a juror. The Court reversed both convictions and remanded the matter for a new trial.

---

[5] St. Rec. Vol. 2 of 27, Trial Minutes, 3/26/01; Trial Minutes, 3/27/01; Trial Minutes, 3/28/01; Trial Minutes, 3/29/01; Trial Minutes, 3/30/01; Trial Minutes, 3/31/01.

[6] St. Rec. Vol. 2 of 27, Penalty Phase Minutes, 4/1/01.

[7] St. Rec. Vol. 2 of 27, Sentencing Minutes (Williams), 4/27/01; Sentencing Minutes (Harris), 4/27/01.

[8] *State v. Williams*, 829 So.2d 675 (La. App. 5th Cir. 2002) (Table); St. Rec. Vol. 3 of 27, 5th Cir. Opinion, 01-KA-1298 (Williams), 10/29/02; *State v. Harris*, 871 So.2d 599 (La. App. 5th Cir. 2002) (Table); St. Rec. Vol. 3 of 27, 5th Cir. Opinion, 01-KA-1299 (Harris), 10/29/02.

[9] *Id*.

Thereafter, on April 21, 2003, the indictment was amended to charge both Williams and Harris with second degree murder.[10] The trial on this charge was held before a jury on April 21 through 25, 2003, and both Williams and Harris were found guilty as charged.[11] On May 19, 2003, after denying the motions for new trial, the Trial Court sentenced Williams and Harris to serve life imprisonment without benefit of parole, probation, or suspension of sentence.[12]

On joint appeal, Williams and Harris raised two grounds for relief: (1) the identification testimony from Lewis should have been suppressed as unreliable; and (2) insufficient evidence to convict.[13] The Court affirmed the convictions and sentences finding no merit to the claims raised.[14] The Louisiana Supreme Court denied Williams's subsequent writ application without reasons on October 29, 2004.[15]

Williams's conviction became final 90 days later, on January 27, 2005, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1)).

---

[10] St. Rec. Vol. 1 of 27, Indictment, 4/27/00, as amended on 4/21/03.

[11] St. Rec. Vol. 7 of 27, Trial Minutes, 4/21/03; Trial Minutes, 4/22/03; Trial Minutes, 4/23/03; Trial Minutes, 4/24/03; Trial Minutes, 4/25/03.

[12] St. Rec. Vol. 7 of 27, Sentencing Minutes (Williams), 5/19/03; Sentencing Minutes (Harris), 5/19/03; Motion for New Trial (Williams), 5/19/03.

[13] *State v. Harris*, 871 So.2d at 599.

[14] *Id.*

[15] *State v. Harris*, 885 So.2d 584 (La. 2004); St. Rec. Vol. La. S. Ct. Order, 2004-KO-1289, 10/29/04; St. Rec. Vol. 27 of 27, La. S. Ct. Writ Application, 04-KO-1289, 5/28/04 (postal metered 4/28/04, signed 4/26/04); St. Rec. Vol. 7 of 26, La. S. Ct. Letter, 2004-KO-1289, 5/28/04 (postal metered 4/28/04).

## II. Procedural History

Over six months later, on August 4, 2005, Williams submitted an Application for Post-Conviction Relief, which was filed in the Trial Court on August 10, 2005, raising two grounds for relief:[16] (1) counsel was ineffective for failure to file a motion to sever the trials; and (2) counsel was ineffective for failure to file a motion to suppress the identification testimony of Mack or to make a contemporaneous objection to it at trial. Using the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the Trial Court denied the application as meritless on August 24, 2005.[17] That same day, the Court denied Williams's motion to amend the application to add additional claims.[18]

On October 24, 2005, Williams signed a Notice of Intent to the Trial Court which was filed on November 3, 2006.[19] The Trial Court determined that the notice was timely filed because of delayed service of its prior order and granted Williams until December 3, 2005 to file a writ application in the Louisiana Fifth Circuit.[20]

In the meantime, on October 31, 2005, Williams prepared an Application for Post Conviction Relief, which was filed on November 8, 2005, and in which he raised three grounds for relief:[21] (1) he was denied his rights under the confrontation clause; (2) counsel was ineffective for failure to investigate the unavailability of Lewis at the second trial and for failure to subpoena crucial state witnesses; and (3) the cumulative trial errors violated due process. The Trial Court denied relief on

---

[16]St. Rec. Vol. 9 of 27, Application for Post-Conviction Relief, 8/10/05.

[17]St. Rec. Vol. 9 of 27, Trial Court Order (1), 8/24/05.

[18]St. Rec. Vol. 9 of 27, Trial Court Order (2), 8/24/05; Motion to File, 8/10/05.

[19]St. Rec. Vol. 9 of 27, Notice of Intent, 11/3/05 (signed 10/24/05).

[20]St. Rec. Vol. 9 of 27, Trial Court Order (1), 11/16/05.

[21]St. Rec. Vol. 9 of 27, Application for Post-Conviction Relief, 11/8/05 (signed 10/31/05).

November 16, 2005, finding no merit to the claims raised.[22] Williams did not pursue further review of these claims.

Instead, on November 28, 2005, Williams timely[23] submitted a writ application to the Louisiana Fifth Circuit, which was filed December 8, 2005, challenging the Trial Court's August 24, 2005, denial of relief on his original post-conviction application.[24] He raised the same two grounds for relief:[25] (1) counsel was ineffective for failure to file a motion to sever the trials; and (2) counsel was ineffective for failure to file a motion to suppress the identification testimony of Mack or to make a contemporaneous objection to it at trial. The Court denied the application on December 14, 2005, finding no error in the Trial Court's ruling.[26]

On January 25, 2006, Williams submitted an untimely[27] writ application to the Louisiana Supreme Court, which was filed on April 10, 2006, raising the same two claims.[28] The Court denied the writ application without reasons on October 27, 2006.[29]

---

[22] St. Rec. Vol. 9 of 27, Trial Court Order (2), 11/16/05.

[23] Although, the State suggests that this application was not timely filed, it failed to take into consideration the applicable mailbox rule and the return date set by the Trial Court. Doing so, the writ application was filed timely.

[24] St. Rec. Vol. 27 of 27, 5th Cir. Writ Application, 05-KH-977, 12/8/05 (postmarked 11/28/05).

[25] *Id.*

[26] St. Rec. Vol.

[27] Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a writ application in the Louisiana Supreme Court. Williams dated the application on January 25, 2006. The application was postmarked November January 26, 2006, and filed by the Court on April 28, 2006. All of the dates are outside the allowable 30-day period. *See* St. Rec. Vol. 27 of 27, La. S. Ct. Writ Application, 06-KH-0833, 4/10/06; *Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006).

[28] St. Rec. Vol. 27 of 27, La. S. Ct. Writ Application, 06-KH-0833, 4/10/06 (signed 1/25/06, postmarked 1/26/06).

[29] *State ex rel. Williams v. State*, 939 So.2d 1271 (La. 2006); St. Rec. Vol. 27 of 27, La. S. Ct. Order, 2006-KH-0833, 10/27/06.

In the meantime, on April 28, 2006, Williams submitted a second untimely[30] writ application raising the same claims, which was filed by the Louisiana Supreme Court on June 13, 2006.[31] The Court denied the application on March 9, 2007 as repetitive, citing La. Code Crim. P. art. 930.4(D).[32]

## III. Federal Petition

On January 24, 2007, the Clerk of Court filed Williams's petition for federal habeas corpus relief in which he raised two grounds for relief:[33] (1) counsel was ineffective for failure to file a motion to sever the trials; and (2) counsel was ineffective for failure to file a motion to suppress the identification testimony of Mack or to make a contemporaneous objection to it at trial. The State filed a response in opposition to Williams's petition alleging that the petition was not timely filed.[34] Alternatively, the State contends that the claims were not exhausted in the state courts, because Williams's writ application to the Louisiana Supreme Court was not properly filed.

## IV. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to Williams's petition, which is deemed filed in this Court under the

---

[30]This application was signed, postmarked and filed after the 30-day period allowed for under Louisiana law.

[31]St. Rec. Vol. 27 of 27, La. S. Ct. Writ Application, 06-KH-1488, 6/13/06 (signature notarized 4/26/06, postmarked 4/28/06).

[32]*State ex rel. Williams v. State*, 949 So.2d 435 (La. 2007); St. Rec. Vol. 27 of 27, La. S. Ct. Order, 2006-KH-1488, 3/9/07.

[33]Rec. Doc. No. 1.

[34]Rec. Doc. No. 17.

[35]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

federal mailbox rule on December 5, 2006.[36] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State argues that Williams's petition was not timely filed and, alternatively, that his claims are not exhausted. The Court need not address the exhaustion defense, because the limitations defense is dispositive of Williams's petition for the reasons set forth below.

## V. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[37] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Williams's conviction

---

[36] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Williams's petition on January 24, 2007, when the filing fee was paid. Williams dated his signature on the petition on December 5, 2006. This is the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[37] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral

became final on January 27, 2005, which was 90 days after the Louisiana Supreme Court denied his post-appeal writ application.

Under the plain language of § 2244, Williams had until January 27, 2006, to file a timely federal application for habeas corpus relief, and he failed to do so. Thus, literal application of the statute would bar Williams's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120

---

review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

(2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d. Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"), *aff'd*, 488 F.3d 187 (3d. Cir. 2007). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Williams's AEDPA filing period began to run on January 28, 2005, the day after his conviction became final. The filing period ran for 188 days, until August 4, 2005, when he submitted his first post-conviction application to the Trial Court. The application remained pending until January 13, 2006, which was 30 days after the Louisiana Fifth Circuit denied the related writ application and Williams did not seek timely review in the Louisiana Supreme Court.

The filing period began to run again on January 14, 2006, and did so for another 177 days, when it expired on July 10, 2006. Williams had no other properly filed state post-conviction or other collateral review pending during that time period. As discussed above, the Louisiana Supreme Court writ applications submitted by Williams on January 25, 2006, and on April 28, 2006 were not timely filed in accordance with Louisiana law. As noted above, under La. S. Ct. Rule X§5, an application

seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. *See Causey*, 450 F.3d at 604-05; *Marshall*, 155 Fed. Appx. at 769; *see also* La. Code Crim. Proc. art. 922(A).

Williams's first writ application was signed on January 25, 2006, postmarked January 26, 2006, and filed by the Court on April 10, 2006. The second writ application was signed April 26, 2006, postmarked April 28, 2006, and filed by the Court on June 13, 2006. The applications each were submitted more than 30 days after the appellate court's ruling.

A writ application which fails to comply with La. S. Ct. Rule X§5(a) is not properly filed because it is untimely, and it is not pending post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008); *Williams v. Cain*, 217 F.3d at 309-11; *see Pace*, 544 U.S. at 414. Williams does not benefit from any tolling for either of his untimely writ applications to the Louisiana Supreme Court.

Williams's federal petition is deemed filed on December 5, 2006, which was almost five months after the AEDPA filing period expired on July 10, 2006. Williams's federal petition must be dismissed as untimely.[38]

---

[38]The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002). Williams has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Leon Williams, Jr.'s petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within(10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 29th day of April, 2009.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**